# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VICKI R. NOLAN<br>2101 2ND STREET, N.E.<br>WASHINGTON, DISTRICT OF COLUMBIA near [20002]<br><br>Plaintiff(s)<br><br>Vs.<br><br>SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.<br>12505 PARK POTOMAC AVENUE, SIXTH FLOOR POTOMAC, MARYLAND 20854<br><br>HSBC MORTGAGE CORPORATION (USA) C T CORPORATION SYSTEM<br>WASHINGTON, DISTRICT OF COLUMBIA 20005<br><br>FEDERAL NATIONAL MORTGAGE ASSOC<br>3900 WISCONSIN AVENUE, N.W.<br>WASHINGTON, DC 20016<br><br>&<br><br>MCGUIREWOODS, LLP<br>P.O. BOX 31247<br>201 NORTH TRYON ST, SUITE 3000<br>CHARLOTTE, NC 28202 | Case: 1:16–cv–01792        (F-Deck)<br>Assigned To : Chutkan, Tanya S.<br>Assign. Date : 9/8/2016<br>Description: Pro Se Gen. Civil   Jury Demand<br><br><br><br><br><br><br>NOTICE OF CLAIM OF<br>LIS PENDENS LIEN AND<br>RELIEF FOR COMPENSATORY AND<br>PUNITIVE DAMAGES |

COMES NOW, Vicki R. Nolan, moving Sui Juris on the land, secured party and owner for the Assumed Business Name/Trade Name VICKI R. NOLAN, hereafter "Pro se Plaintiff(s)" submits this NOTICE OF CLAIM OF LIS PENDENS LIEN AND DECLARATORY RELIEF AND FOR COMPENSATORY AND PUNITIVE DAMAGES against SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A. and HSBC MORTGAGE CORPORATION (USA). Plaintiff(s) respectfully requests the indulgence of this court as Plaintiff(s) is not schooled in law.

**RECEIVED**

SEP - 8 2016

Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

## PARTIES

A. Pro se, Plaintiff(s) Vicki R. Nolan, "et-al", hereafter Vicki R. Nolan, Pro se, or Plaintiff(s), is an individual residing in Prince Georges County, Maryland..

B. Defendant(s) Shulman, Rogers, Gandal, Pordy & Ecker P.A., hereafter Shulman, Rogers, Gandal, Pordy & Ecker P.A., or Defendant(s), is a corporation operating under the laws of the District of Columbia.

C. Defendant(s) HSBC Mortgage Corporation (USA), hereafter HSBC Mortgage Corporation (USA), or Defendant(s), is a corporation operating under the laws of the District of Columbia.

## PLAINTIFF DEMAND FOR A JURY TRIAL

Plaintiff(s) herein referenced, asserts her rights under the Seventh Amendment to the United States Constitution and demands a trial by jury on all issues of fact, in accordance with Federal Rule of Civil Procedure 38.

## MANDATORY JUDICIAL NOTICE

Let the record show the Plaintiff(s) herein binds and accepts the oaths of all other officers of the court who may come in contact with this matter are noticed under authority of the supremacy and equal protection clauses of the United States Constitution and the common law authorities of *Haines v Kerner*, 404 U.S. 519-421, *Platsky v. C.I.A.* 953 F.2d. 25, and *Anastasoff v. United States*, 223 F.3d 898 (8th Cir. 2000), relying on Willy v. Coastal Corp., 503 U.S. 131, 135 (1992), "United States v. International Business Machines Corp., 517 U.S. 843, 856 (1996), quoting Payne v. Tennessee, 501 U.S. 808, 842 (1991) (Souter, J., concurring), Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647. American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001). In re *Haines*: pro se litigants are held to less stringent pleading standards than bar licensed attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims. In re *Platsky*: court errs if court dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair pleadings. In re *Anastasoff*: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. Platsky: court errs if

court dismisses the pro se litigant (Plaintiff(s) is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings.

## INTRODUCTION; JURISDICTION AND VENUE

1.  This is an action for a Verified Fair Debt Collection Practice Act including Complaint Violations, Willful Fraud, Declaratory Relief, Compensatory Damages, Punitive Damages and other relief.

2.  This court has jurisdiction and this civil action arises under a fraudulent foreclosure action. Wherein Plaintiff(s) moves the court with a Verified Fair Debt Collection Practicing Act Complaint, Violations, Willful Fraud, Declaratory Relief, Compensatory Damages, Punitive Damages and a Notice of a Claim of Lis Pendens Lien against Shulman, Rogers, Gandal, Pordy & Ecker P.A. and HSBC Mortgage Corporation (USA).

3.  Whereas **Plaintiff(s) moves the court for Injunctive Relief and Declaratory Judgment, pursuant to the Annotated Code of the District of Columbia** and of the rules regulating the District of Columbia Bar, District of Columbia Rules of Civil Procedure because of newly discovered evidence of Fraud on the part of the Defendant(s) in the foreclosure action.

4.  Shulman, Rogers, Gandal, Pordy & Ecker P.A. is attempting an unlawful and illegal foreclosure sale of Plaintiff(s') home. **The Plaintiff(s) moves the court for an Emergency Temporary Restraining Order** pursuant the Annotated Code of the District of Columbia and Federal Rules of Civil Procedure 65(d)(1)(2) based, in part, on Defendant(s)' collective actions that violated several FDCPA and Unfair and Deceptive Business Practice Laws, FDCPA, 15 U.S.C. §1692 et. Seq., and FAIR BUSINESS PRACTICES ACT. A Fair Debt Collection Act Violations, Deceptive Business Practices and fraudulent foreclosure sale of the property located at: 2101 2nd Street, N.E., Washington, District of Columbia near [20002] will cause irreparable injury and damage to Plaintiff(s). The complaint alleges Fair Debt Collection Act Violations and violations of law by fraudulent practices of Defendant(s), denying Plaintiff(s) a due process/fair trial, based upon fraudulent foreclosure procedures and documents before the court.

## STATUS OF PARTIES

5.  Plaintiff(s) herein is the Secured Party Creditor and the owner of title for the said property located at: 2101 2nd Street, N.E., Washington, District of Columbia near [20002].

Defendant(s) is doing business and collecting debt under the name of Shulman, Rogers, Gandal, Pordy & Ecker P.A. The Defendant(s) is doing business in the District of Columbia. Defendant(s) is served at the Resident Agent: C T Corporation System at 1015 15th Street, N.W., Suite 1000, Washington, District of Columbia 20005.

Defendant(s) is doing business and collecting debt under the name of HSBC Mortgage Corporation (USA). The Defendant(s) is doing business in the District of Columbia. Defendant is served at the Resident Agent: C T Corporation System at 1015 15th Street, N.E., Suite 1000, Washington, District of Columbia 20005.

## CAUSE OF ACTIONS

1.  Plaintiff(s) entered into a loan contract for what she believed was to borrow money from HSBC Mortgage Corporation (USA) (the stated original lender on all closing documents including Note and Security Deed) for the purchase of a property located at: 2101 2nd Street, N.E., Washington, District of Columbia near [20002]

2.  A Promissory Note, hereafter "Note", was prepared for, and in the name of Plaintiff(s), with an original loan number 0609501607 and MIN 100022406095016078 number assigned to it, to identify the security instrument.

3.  At some time unknown to Plaintiff(s), the Note and security deed were separated/split, where the deed alone was separated from the note. Based on knowledge and belief, the promissory note has been pledged, hypothecated, and/or assigned as collateral security to an unknown entity.

4.  Plaintiff(s) also asserts that at some time unknown to Plaintiff(s), and without Plaintiff(s)' authorization or signature, the Defendant(s) changed the loan number 0609501607 (and/or a new Note was created with Plaintiff's name, and property

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

address attached to it), was assigned to the alleged indebtedness to the representatives for Defendant(s) HSBC Mortgage Corporation (USA), (thus separating or splitting the original Note from the original Security Deed).

5. Plaintiff(s) received a written communication from the Shulman, Rogers, Gandal, Pordy & Ecker P.A., who affirmatively represented that its "client" was, in fact, HSBC Mortgage Corporation (USA) for the aforementioned alleged indebtedness regarding Plaintiff(s)' said property referenced herein.

6. The said correspondence, however fails to affirmatively represent that Agents for Shulman, Rogers, Gandal, Pordy & Ecker P.A. own and hold any interest in the Security Deed or has any rights therein or thereto which would support a foreclosure of the property.

7. The said correspondence, which also had an attachment "NOTICE OF SALE UNDER POWER" hereafter "NOTICE OF SALE", together included several statements which form the basis of this action against the Defendant(s).

8. The new loan number 29753647 is not connected to Plaintiff(s), which is a misrepresentation and violation of FDCPA 15 U.S.C. §1692 et. Seq.

9. Shulman, Rogers, Gandal, Pordy & Ecker P.A., provided Plaintiff(s) with written notice that the "client" for purposes of the loan and foreclosure sale was HSBC Mortgage Corporation (USA). This is the same Shulman, Rogers, Gandal, Pordy & Ecker P.A. which also affirmatively represented that the entity which had full authority to negotiate, amend, and modify all terms of the Deed of Trust, Instrument No. 2006001053 among the Official Records of the District of Columbia, for purposes of the subject loan and foreclosure sale. HSBC Mortgage Corporation (USA) is also Defendant(s)' "client."

10. The Plaintiff(s) has requested the proof and even sent a Qualified Written Request, as allowed under the Real Estate Protection Act, to Defendants HSBC Mortgage Corporation (USA) who has refused to provide proof thereof and to answer Plaintiff(s)' questions.

11. Defendant(s)' foreclosure sale notice letter provided by Shulman, Rogers, Gandal, Pordy & Ecker P.A. is not in accordance with notice provisions involving foreclosure proceedings as required under the District of Columbia law. Based on knowledge and

5

belief, <u>ONLY</u> a vested investor in a securitized trust, who is the real party in interest, may authorize amendments and/or modifications of the Plaintiff(s)' Note and Security Deed.

12. Furthermore, District of Columbia code prescribes that *"A creditor shall not include: (A) a servicer; (B) an assignee; (C) a purchaser; or (D) any state or local housing finance agency or any other state or local governmental or quasi-governmental entity."*

13. As such, Defendant(s) Shulman, Rogers, Gandal, Pordy & Ecker P.A. is without legal standing and is legally precluded from foreclosing on and selling the said property located at: 2101 2nd Street, N.E., Washington, District of Columbia near [20002].

14. Plaintiff(s) asserts that since all Defendant(s) had, or should have had knowledge of Maryland Fair Business Practicing Act, Maryland's Foreclosure law and procedures, and FDCPA, therefore, all notices of foreclosure sale that was sent to Plaintiff(s) by Shulman, Rogers, Gandal, Pordy & Ecker P.A. on behalf of their client HSBC Mortgage Corporation (USA) and publications that were made in the public media relating to Plaintiff(s)' property, are also misrepresentations, and violations of 15 U.S.C. §1692 et. Seq.

## WRIT IN THE NATURE OF DISCOVERY

15. The Secured Party Vicki R. Nolan and Pro se, Plaintiff(s), in the matter of VICKI R. NOLAN, pursuant to Executive Order 11615, Economic Stabilization Act of 1970; and as mandated by Public Policy pursuant to HJR-192 of June 5, 1933, Emergency Banking Relief Act of March 9, 1933, Public Laws 73-10, 89-719 [73 Congress, Public Law No. 1 March 9, 1933 (Title I, 1,48 Stat.)] and Uniform Commercial Code §1-103, §1-104, §1-202, § 10-104, § 3-310, § 3-311 and § 6-603 does hereby request a validation of debt regarding the above styled case and presentments from Shulman, Rogers, Gandal, Pordy & Ecker P.A. - Debt Collector "et al."

## NOTICE FOR A CLAIM WHICH RELIEF CAN BE GRANTED IN NATURE OF A NOTICE AND DEMAND FOR DISCOVERY

16. Let the record show Plaintiff(s) respectfully demands:

   a) Securitization audit

   b) Bloomberg Financial Report on the Trust Under Penalty of Perjury

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

   c) Inspection for both sets of books showing actual loan documentation; a True Ledger of Accounting and Records of the Individual(s) who takes commercial liability and Responsibility for the Verification, Accuracy and Obligation of each Book keeping entry under penalty of perjury

   d) Copy of the Allonge

   e) Supply a 1099-INT for the Escrow account interest, which is due

   f) The IRS form 1099-A documenting that the money in the Escrow account has been there from day three of the original contract and always was in your possession and has not been turned over to the Plaintiff(s) or the account settled.

Therefore, Plaintiff(s) is requesting recoupment of the funds generated by the loan documents. **NOTICE:** Let the record show the Federal Reserve Policies and Procedures and the Generally Accepted Accounting Principles (GAAP) requirements imposed upon all Federally-insured (FDIC) banks in Title 12 of the United States Code, section 1831n (a), prohibit them from lending their own money from their own assets, or from other depositors. **NOTICE:** US Supreme Court Decision of 1872 which states that the note and the deed of trust support each other and when the note and deed of trust become separated the deed of trust becomes void. **NOTICE:** Under Title 12 USC 1813(L)(1) it states the Deposit of a Promissory Note becomes a cash item and when deposited requires a cash receipt. **Plaintiff(s) hereby gives NOTICE AND DEMAND to the Shulman, Rogers, Gandal, Pordy & Ecker P.A. and the representatives for HSBC Mortgage Corporation (USA)** to cure their DISHONOR IN COMMERCE and Process the said Promissory Note and deposited funds into an escrow account under the VICKI R. NOLAN styled name.

### FRAUD UPON THE COURT

17. Let the record show the Plaintiff(s) asserts that it appears Shulman, Rogers, Gandal, Pordy & Ecker P.A. and representatives for HSBC Mortgage Corporation (USA) are in collusion together for Willful Fraud to defraud Plaintiff(s) of her interest in the said homestead property.

18. Shulman, Rogers, Gandal, Pordy & Ecker P.A. and representatives for HSBC Mortgage Corporation (USA) are attempting to testify for a witness not in appearance.

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

19. Shulman, Rogers, Gandal, Pordy & Ecker P.A. and representatives for HSBC Mortgage Corporation (USA) cannot support their claims to the said foreclosure action herein and no fact appears on record by a **fact witness** of subject matter whether by deposition, admission, answer to interrogatory, or by a **fact witness affidavit** to support Shulman, Rogers, Gandal, Pordy & Ecker P.A. and representatives for HSBC Mortgage Corporation (USA). **If there is no Fact Witness Affidavit or Witness, the Court lacks Subject Matter Jurisdiction.** If there is no one there to state the facts of the matter, there is no Subject Matter Jurisdiction. It is a fact of law that the person asserting jurisdiction must, when challenged, prove that jurisdiction exists; mere good faith assertions of power and authority (jurisdiction) have been abolished. Zeller v. Rankin, 101 S. Ct. 2020, 451 U.S. 939, 68 L. Ed 2d 326. When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction then judicial immunity is lost. Any attorney who, in any proceeding before any court of a justice of the peace or police judge or other inferior court in which he appears as attorney, willfully misstates any proposition or seeks to mislead the court in any matter of law is guilty of a misdemeanor and on any trial therefore the state shall only be held to prove to the court that the cause was pending, that the defendant appeared as an attorney in the action, and showing what the legal statement was, wherein it is not the law. If the defense be that the act was not willful, the burden shall be on the defendant to prove that he/she did not know that there was error in his/her statement of law." Any person guilty of falsely preparing any book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced as genuine upon any trial, proceeding or inquiry whatever, authorized by law, SHALL BE GUILTY OF A FELONY. Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury...It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function - thus where the impartial functions of the court have been directly corrupted." "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v. C.I.R., 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final." "Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled Illinois law that any attempt to commit "fraud upon the court" vitiates the entire proceeding. The People of the State of Illinois v. Fred E. Sterling, 357 Ill. 354; 192 N.E. 229 (1934) ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions."); Allen F. Moore v. Stanley F. Sievers, 336 Ill. 316; 168 N.E. 259 (1929) ("The maxim that fraud vitiates every transaction into which it enters ..."); In re Village of Willowbrook, 37 Ill.App.2d 393 (1962) ("It is axiomatic that fraud vitiates everything."); Dunham v. Dunham, 57 Ill. App. 475 (1894), affirmed 162 Ill. 589 (1896); Skelly Oil Co. v. Universal Oil Products Co., 338 Ill. App. 79, 86 N.E.2d 875, 883-4 (1949); Thomas Stasel v. The American Home Security Corporation, 362 Ill. 350; 199 N.E. 798 (1935). Under Federal law, when any officer of the court has committed "fraud upon the court", the orders and judgment of that court are void, of no legal force or effect. New York Criminal Procedure - Article 70 - (70.10 - 70.20) Standards of Proof. New York Criminal Procedure - Article 60 - (60.10 - 60.76) Rules of Evidence and Related Matters. New York Criminal Procedure - Article 20 - (20.10 - 20.60) Geographical Jurisdiction of Offenses.

## MOTION TO ENJOIN CASES IN THE DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

20. Plaintiff(s) moves the court to Enjoin Case No. 1:16-cv-01265-TSC, in the District Court for the District of Columbia to this Notice of Claim for Lis Pendens Lien and Declaratory Relief, Compensatory and Punitive Damages against Shulman, Rogers, Gandal, Pordy & Ecker P.A. and HSBC Mortgage Corporation (USA).

## FAIR DEBT COLLECTION ACT

21. Plaintiff(s) reaffirms and re-alleges paragraphs 1 through 20 hereinafter as if set forth more fully herein below.

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

22. Plaintiff(s) has properly disputed the indebtedness alleged by the Defendant(s) in writing. Defendant(s) are debt collectors for purposes of the Fair Debt Collection Practices Act.

23. Defendant(s) Shulman, Rogers, Gandal, Pordy & Ecker P.A. used deceptive and false statements as a routine part of their misleading business practice, in their written communications with Plaintiff(s) in violations of FDCPA as contained therein.

24. Defendant(s) Shulman, Rogers, Gandal, Pordy & Ecker P.A., made false statements, and knowingly produced fraudulent documents in their attempt to deceive Plaintiff(s), and enforce an un-enforceable Security Deed by virtue of a wrongful, and unlawful Foreclosure Sale of Plaintiff(s)' property.

25. Notwithstanding the dispute of the indebtedness by the Plaintiff(s), the Defendant(s) have willfully violated several provisions of the Fair Debt Collection Practices Act and are subject to the statutory damage provisions contained therein.

## FRAUD

26. Plaintiff(s) believes that Defendant(s) collectively at some time unknown to Plaintiff(s), and without her signature or authorization, created, a new Note with a new loan number, bearing Plaintiff(s') Name and property.

27. Plaintiff(s) further believes that Shulman, Rogers, Gandal, Pordy & Ecker P.A. and representatives for HSBC Mortgage Corporation (USA) did collectively, with full knowledge of the constructive fraud, then attach a claim of indebtedness to Plaintiff, using the new loan number to attempt to unlawfully enforce the now unenforceable original Security Deed that was separated, from the original Note.

28. Plaintiff(s) asserts that all of the above described false statements on the Assignment voids the Assignment, making the alleged new Assignee – Agents for Shulman, Rogers, Gandal, Pordy & Ecker P.A., an authorized party without standing to maintain a foreclosure of Plaintiff(s)' property herein referenced.

29. Plaintiff(s) believes that Shulman, Rogers, Gandal, Pordy & Ecker P.A. and Agents for HSBC Mortgage Corporation (USA) actions as described above are violations

FDCPA, Unfair and Deceptive Business Practice laws FDCPA, 15 U.S.C. §1692 et. Seq., and FAIR BUSINESS PRACTICES ACT.

30. Plaintiff(s) believes that Defendant(s) Shulman, Rogers, Gandal, Pordy & Ecker P.A. and HSBC Mortgage Corporation (USA) engaged in deceptive and unfair trade practices which constituted fraud and violations of the District of Columbia Uniform Deceptive Trade Practices Act ("UDTPA") and Fair Business Practices Act ("FBPA"), when in complicit with Shulman, Rogers, Gandal, Pordy & Ecker P.A., and Agents for HSBC Mortgage Corporation (USA), fraudulently signed the Assignment.

31. Plaintiff(s) believes that Defendant(s) Shulman, Rogers, Gandal, Pordy & Ecker P.A. have committed perjury, and Fraud upon the court, whereas a Maryland Licensed attorney, to whom a lawful oath or affirmation has been administered, in a judicial proceeding, he/she knowingly and willfully makes a false statement.

32. Plaintiff(s) believes that Shulman, Rogers, Gandal, Pordy & Ecker P.A. and Agents for HSBC Mortgage Corporation (USA), routinely performs defective and fraudulent Assignments", as part of their business practice. In this regard, *The Eleventh Circuit has held that, the court may take judicial notice of public records as they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Glen Constr., Co., LLC v. Bell Aero. Servs., 2009 U.S. Dist. LEXIS 118335 (M.D. Atl. Dec 21, 2009) (citations omitted); See also, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999).*

## AFFIDAVIT OF FACTS AND STATEMENTS OF THE TRUTH

33. Let the record show I, Vicki R. Nolan, am of lawful age, competent, and willing to testify as follows based on my personal knowledge. It appears, and Plaintiff(s) believes based on evidence, experience and common sense that Agents for the said Defendant(s) collectively, did work or are working in collusion with each other in violation of the FAIR DEBT COLLECTION PRACTICING ACT, and acts of WILLFUL FRAUD and/or course of deception, and intentional concealment, omission, or perversion of truth, to (1) gain unlawful or unfair advantage, (2) induce another to part with some valuable item or surrender a legal right, or (3) inflict injury in some manner against Plaintiff(s) herein referenced.

34. Let the record show Shulman, Rogers, Gandal, Pordy & Ecker P.A. is a professional debt collector and have advanced writings which Agents for HSBC Mortgage Corporation (USA) know are false. Let the record show Shulman, Rogers, Gandal, Pordy & Ecker P.A. is relying on the false writings to the detriment of by and through the Agents for HSBC Mortgage Corporation (USA). A jury shall determine if the Defendant(s) are guilty of attempting to extort up to $214,448.17 from Plaintiff(s), herein warranting treble damages, or $643,344.51 plus a like amount for aggravation, inconvenience, defamation, and intentional affliction of emotional duress. Pro se litigants may be entitled to Attorney fees and costs under the Civil Rights Attorney's Fee Award Act of 1976, 90 Stat. 2641, as amended 42 USC 1988.

35. Let the record show Plaintiff(s) herein has evidence and reason to believe that in violation of the fair debt collection act Shulman, Rogers, Gandal, Pordy & Ecker P.A. and Agents for HSBC Mortgage Corporation (USA) performed an act of willful fraud with an unlawful and illegal foreclosure case on the property located at: 2101 2nd Street, N.E., Washington, District of Maryland near [20002].

36. The Defendant(s) Shulman, Rogers, Gandal, Pordy & Ecker P.A. did violate the fair debt collection act and concealed what they knew to be true, misrepresented the facts, made false statements, and perjured themselves in affidavit(s) entered into the District Court of the District of Columbia Case No. 1:16-cv-01265-TSC.

## SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A. IS A DEBT COLLECTOR AND REQUIRED TO FOLLOW TITLE 15 Chapter Sub V section 1692 – DEBT COLLECTION PRACTICES

Let the record show Shulman, Rogers, Gandal, Pordy & Ecker P.A. is a debt collector. Accordingly, let the record show Agents for HSBC Mortgage Corporation (USA) is a Debt Collector herein and are thereby required to follow 15 U.S. Code Chapter 41, Subchapter V - DEBT COLLECTION PRACTICES. Let the record show Title 15 relates to "verified assessment", in other words, the collector must provide proof to validate the debt and any case involving debt. This action herein must be held in the judicial District Court for the District of Columbia. Let the record show Attorney Debt-Collector, Shulman, Rogers, Gandal, Pordy & Ecker P.A. has not verified and validated the alleged debt before initiating Case No. 1:16-cv-

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

01265-TSC in the District Court of the District of Columbia, and willfully violated the Fair Debt Collections Practice Act and are attempting to hold an unlawful, illegal and wrongful foreclosure.

## NOTICE: DEED OF TRUST(S)
## LACK THE LENDER'S ACKNOWLEDGEMENT AND ACCEPTANCE

Let the record show the following Deed of Trust and Agreement lacks the Lender's acknowledgement and acceptance and is inadmissible as evidence of a debt.

Deed of Trust in Instrument No. 2006001053 among the Official Records of the District of Columbia *"EXHIBIT-A"*

## DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT

Let the record show that it appears, and Plaintiff(s) believes, that Attorney/debt collector – Shulman, Rogers, Gandal, Pordy & Ecker P.A., and Agents by and through HSBC Mortgage Corporation (USA) are all working in collusion to deprive and defraud Plaintiff(s) of her property herein referenced. Let the record show the Attorney/debt collector – Shulman, Rogers, Gandal, Pordy & Ecker P.A. appears to have violated the following:

District of Columbia Rules of Professional Conduct:

Rule 3.3 Candor Toward the Tribunal, (a), (1), (3), (b), (c), (d).

Rule 3.4 Fairness to Opposing Party and Counsel, (a), (b), (c), (d), (f), (1), (2).

Rule 3.5 Impartiality and Decorum of the Tribunal, (a), (b), (c), (1), (2), (3), (d).

Rule 3.7 Lawyer as a Witness (a), (1), (2), (3), (b).

Rule 4.1 Truthfulness in Statements to Others, (a), (b).

Rule 8.4 Misconduct, (a), (b), (c), (d), (e), (f), (g).

## ADVANCES OF BANK CREDIT AS THE EQUIVALENT OF MONEY

Let the record show by way of Assignment, HSBC Mortgage Corporation (USA) has accepted the liability for the willful fraudulent action of Shulman, Rogers, Gandal, Pordy & Ecker P.A. Accordingly, HSBC Mortgage Corporation (USA) has assumed the position and liabilities for Attorney Shulman, Rogers, Gandal, Pordy & Ecker P.A. Defendant(s) asserts that Plaintiff(s) signed

a promise to pay, such as a note(s) or credit application (collectively, the "Note"), in exchange for advance of funds, credit, or some type of money to or on behalf of Plaintiff(s). However, the bookkeeping entries required by application of GAAP and the Federal Reserve's own writings should trigger close scrutiny of Shulman, Rogers, Gandal, Pordy & Ecker P.A.'s apparent assertions that Agents for HSBC Mortgage Corporation (USA) lent its funds, credit, or money to or on behalf of Plaintiff(s), thereby causing Plaintiff(s) to owe HSBC Mortgage Corporation (USA) $200,000.00 for Deed of Trust in Instrument No. 2006001053 among the Official Records of the District of Columbia, *"EXHIBIT-A"*. According to the bookkeeping entries shown or otherwise described and application of GAAP, the Plaintiff(s) allegedly were to tender some form of *money* ("lawful money of the United States of America" is the type of money explicitly called for in the Note), securities or other capital equivalent to money, funds, credit, or something else of value in exchange (money of exchange, loosely defined), collectively referred to herein as "money," to repay what the Defendant(s) claims was the *money* lent to the Plaintiff(s).

## MODERN AUTHORITIES ON MONEY

To understand what occurred between Plaintiff(s) and Defendant(s) concerning the alleged loan of *money* or, more accurately, *credit*, it is helpful to review a modern Federal Reserve description of a bank's lending process. *See*, David H. Friedman, MONEY AND BANKING (4th ed. 1984) (apparently already introduced into this case): "The commercial bank lending process is similar to that of a thrift in that the receipt of cash from depositors increases both its assets and its deposit liabilities, which enables it to make additional loans and investments. . . When a commercial bank makes a business loan, it accepts as an asset the borrower's debt obligation (the promise to repay) and creates a liability on its books in the form of a demand deposit in the amount of the loan." (Consumer loans are funded similarly.) Therefore, the bank's original bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of its books. **This would show that the bank received the customer's signed promise to repay as an *asset*, thus *monetizing* the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability of the bank.** The bank then usually would hold this demand deposit in a transaction account on behalf of the customer. Instead of the bank lending its *money* or other assets to the customer, as the customer reasonably might believe from the face of the Note, the bank *created* funds for the customer's transaction account without the

14

customer's permission, authorization, or knowledge and delivered the *credit* on its own books representing those funds to the customer, meanwhile alleging that the bank lent the customer *money*. If HSBC Mortgage Corporation (USA)'s response to this line of argument is to the effect that it acknowledges that it lent credit or issued credit instead of money, one might refer to Thomas P. Fitch, BARRON'S BUSINESS GUIDE DICTIONARY OF BANKING TERMS, "Credit banking," "Bookkeeping entry representing a deposit of funds into an account." But HSBC Mortgage Corporation (USA)'s loan agreement apparently avoids claiming that the bank actually lent the Plaintiff(s) *money*. They apparently state in the agreement that the Plaintiff(s) is obligated to repay principal and interest for the "Valuable consideration (money) that HSBC Mortgage Corporation (USA) gave the Plaintiff (grantor/borrower)."

**According to the Federal Reserve Bank of New York, money is anything that has value that banks and people accept as money; money does not have to be issued by the government.**

For example, David H. Friedman, I BET YOU THOUGHT. . .9, Federal Reserve Bank of New York (4th ed. 1984) (apparently already introduced into this case), explains that banks create new money by depositing IOUs, promissory notes, offset by bank liabilities called checking account balances. Page 5 says, "Money doesn't have to be intrinsically valuable, be issued by government, or be in any special form. . . ." The publication, Anne Marie L. Gonczy, MODERN MONEY MECHANICS 7-33, Federal Reserve Bank of Chicago (rev. ed. June 1992) (apparently already introduced into this case), contains standard bookkeeping entries demonstrating that *money* ordinarily is recorded as a bank *asset*, while a bank *liability* is evidence of *money* that a bank owes. The bookkeeping entries tend to prove that banks accept cash, checks, drafts, and promissory notes/credit agreements (assets) as *money* deposited to create credit or checkbook money that are bank *liabilities*, which shows that, absent any right of setoff, banks owe *money* to persons who deposit *money*. **Cash (money of exchange) is money, and credit or promissory notes (money of account) become money when banks deposit promissory notes with the intent of treating them like deposits of cash.** *See,* 12 U.S.C. Section 1813 (*l*)(1) (definition of "deposit" under Federal Deposit Insurance Act). The Plaintiff acts in the capacity of a lending or banking institution, and the newly issued credit or money is similar or equivalent to a promissory note, which may be treated as a deposit of money when received by the lending bank. Federal Reserve Bank of Dallas publication MONEY AND BANKING, page 11, explains that when

15
NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND
PUNITIVE DAMAGES

banks grant loans, they create new money. The new money is created because a new "loan becomes a deposit, just like a paycheck does." MODERN MONEY MECHANICS, page 6, says, "What they [banks] do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts." The next sentence on the following page explains that the banks' assets and liabilities increase by the amount of the loans.

### HSBC MORTGAGE CORPORATION (USA) IN FACT NEVER LENT ANY OF ITS OWN PRE-EXISTING MONEY, CREDIT OR SOME ASSETS AS CONSIDERATION

Let the record show it appears that HSBC Mortgage Corporation (USA) did not lend its own money and there is an utter *failure of consideration* for the a "loan contract". When HSBC Mortgage Corporation (USA) deposited the Plaintiff(s)' $200,000.00 of newly issued credit into an account, Agents for HSBC Mortgage Corporation (USA) created $200,000.00 of new money.

HSBC Mortgage Corporation (USA) asserts that as an entity they purchased Plaintiff(s)' consumer debt. HSBC Mortgage Corporation (USA) must be able to prove ownership, liability and damage based on reliable relevant knowledge. Since one of the basic tenants of due process is "a witness should not be allowed to swear to the truth of facts when the witness has no personal knowledge of those facts." Therefore, the Court's failure to enforce the primary evidentiary standard of Personal Knowledge in witness testimony, written statements and affidavits renders a violation of Plaintiff(s)' 4th Amendment Due Process Rights. The Supreme Court found thirty years ago in Mathews v. Eldridge, 424 U.S. 319 (1976) where the court stated in part, "procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."

In order to prove a valid case, the Defendant(s) need to convince the Court that there was an underlying debt (typically based on an underlying contract), that there was a default, that there was an amount certain due and owing, and that there is a complete chain of assignment from the original creditor to the current debt buyer. Because each of these elements is hearsay (assuming the rules of evidence apply), the Defendant(s) attempts to authenticate all documents and the statements made in those documents as if they were the Defendant(s)' own business records; as

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

if the Defendant(s) themselves had generated the documents. All testimony offered under oath in a court of law, central to the business records exception is the requirement of personal knowledge. And, like witness testimony in general, business records should be excluded "if the source of information or the method or circumstances of the preparation of the record indicate that the information in the record lacks trustworthiness." District of Columbia courts have refused to admit business records if the party seeking admission cannot produce a live witness or affiant with personal knowledge to verify the manner in which the documents were made. *Bernadyn v. State 887 A.2d 602 (Md. 2005.)*

*To include evidence under the business records exception, a party must show that the records meet certain basic requirements: (1) the records must have been made at or near the time of the events that they concern; (2) they must have been made by a person with personal knowledge of the information described; (3) they must have been made in the course of regularly conducted business activity; and (4) the regular practice of the business must be to make and keep the records. MD. R. EVID. 5803(b)(6).*

District of Columbia courts have also required personal knowledge in affidavits outside the context of the business records exception to the hearsay rule. See, e.g., Mercier v. O'Neill Assocs., Inc., 239 A.2d 564, 564–65 n.1 (Md. 1968) (finding affidavit lacking personal knowledge insufficient under Rule 2-501 to sustain the trial court's granting of summary judgment in contract payment dispute); White v. Friel, 123 A.2d 303, 305 (Md. 1965) (finding affidavits lacking personal knowledge deficient under Summary Judgment Rule 2 in the case of a creditor seeking to recover on debtor's open account, and so summary judgment was improper based on the uncertainties of the case); Fletcher v. Flournoy, 81 A.2d 232, 234 (Md. 1951).

HSBC Mortgage Corporation (USA) is using the Plaintiff(s)' Note for its own purposes and has not proven that Defendant(s) is the injured party and have submitted invalid Affidavits which renders the witness statements inadmissible. The Defendant(s) are using an Uncollectable Instrument to extort Plaintiff(s) for Defendant(s)' gain.

## SLANDER OF TITLE

Plaintiff(s) reaffirms and re-alleges paragraphs hereinabove as if set forth more fully herein below. The legal effect of separating the promissory note from the security deed is to nullify the enforcement provisions of the security deed and to render the same a slander to the title of the property. Defendant(s) have caused a fraudulent document to be placed upon the Property Records of the District of Columbia which creates not only a cloud upon Title, but slanders the Title as well.

Plaintiff(s) respectfully demands to inspect the "Original Deed of Trust Note," Acknowledged and Accepted with wet ink signatures, along with the Title Page that shows whether or not the Deed of Trust has been satisfied. Plaintiff(s) believe that HSBC Mortgage Corporation (USA) has sold the original note and failed to give credit to Plaintiff(s)' account. This said note was created on Plaintiff(s)' credit, and signature, and was not an asset of HSBC Mortgage Corporation (USA). Plaintiff(s) believes the Defendant(s) have no legal right to a claim/foreclosure complaint. As you well know, Proof of Claim/Debt must be established by law. Only the Original Acknowledged and Accepted Trust Note will be accepted as proof of claim. Accordingly, only the Original Acknowledged and Accepted Deed of Trust will be accepted as proof of claim. If the Defendant(s) have the original acknowledged and accepted Deed of Trust note, let them bring it forth and offer their Proof of Claim/Debt for my/our inspection. Accordingly, if the Defendant(s) have the original acknowledged and accepted Deed of Trust, let them bring it forth and offer their Proof of Claim/Debt for my/our inspection. Plaintiff(s) believes the Defendant(s) DO NOT have lawful Proof of Claim/Debt and there is no evidence to the contrary. This is Dishonor in commerce, wrongful foreclosure, violation of the fair debt collection act, willful fraud, willful misrepresentation, willful breach of trust, and willful dishonest service to the public, willfully making false statements, plus aggravation, inconvenience, defamation, and intentional affliction of emotional duress and there is no evidence to the contrary.

## OPPORTUNITY TO CURE

The Defendant(s) Shulman, Rogers, Gandal, Pordy & Ecker P.A. by and through its representative(s) have 21 calendar days to cure their Dishonor by the following:

1. <u>Withdraw</u> initial foreclosure complaint <u>Case No. 1:16-cv-01265-TSC</u>, with prejudice, in the District Court for the District of Columbia; show the property located at: 2101 2nd Street, N.E., Washington, District of Columbia near [20002] as Discharged in Full; and a <u>Deed of Reconveyance / Quite Title</u> for said property located at 2101 2nd Street, N.E., Washington, District of Columbia near [20002], to VICKI R. NOLAN, Estate.

2. Provide the following:

   a) Securitization audit

   b) Bloomberg Financial Report on the Trust Under Penalty of Perjury

   c) Inspection for both sets of books showing actual loan documentation; a True Ledger of Accounting and Records of the Individual(s) who takes commercial liability and Responsibility for the Verification, Accuracy and Obligation of each Book keeping entry under penalty of perjury

   d) Copy of the Allonge

   e) Supply a 1099-INT for the Escrow account interest, which is due

   f) The IRS form 1099-A documenting that the money in the Escrow account has been there from day three of the original contract and always was in your possession and has not been turned over to the Plaintiff(s) or the account settled.

Therefore, Plaintiff(s) is requesting recoupment of the funds generated by the loan documents. Prove your claims of the representative(s) by and through Shulman, Rogers, Gandal, Pordy & Ecker P.A. in the initial complaint <u>Case No. 1:16-cv-01265-TSC</u> by providing me with lawfully documented evidence requested/demanded that is certified true and correct, by (Officers of the Court), in their unlimited commercial liability, while Under Oath, on and for the Official Record, under penalties of the law including Perjury. This evidence must prove your right to a foreclosure sale by preponderance or the greater weight of evidence and must answer each and every averment in this Verified Counter Complaint, Point by Point individually. If any and all points are not answered fully by Defendant(s) / verified counsel and accompanied by lawfully documented evidence, as provided herein, that will be Default on the part of the Defendant(s). Non Response according to the conditions herein will be default. Incomplete answers and/or lack of documented evidence as outlined herein will be Default. If the Defendant(s)/verified

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

counsel fail to respond as outlined herein, within 21 calendar days, this will be Default. Non Response will be a Self-Executing Confession of Judgment by all/each Defendant(s) and will be complete agreement with all the statements, terms, and conditions of this contract. This is a contract and Any officer of the court/unverified counsel that interferes or involves himself/herself with this claim will be added to this claim and become a Third Party Defendant. All Defendant(s) successors and assigns, "et-al" are jointly and severally liable for this claim.

## JURY TRIAL DEMANDED

Plaintiff(s) does hereby Demand a Jury Trial for the above styled action.

## REMEDY SOUGHT

1. That this Court grant Declaratory Judgment which states that Agents for Shulman, Rogers, Gandal, Pordy & Ecker P.A. and Agents for HSBC Mortgage Corporation (USA) has no legal standing or the proper legal or equitable interest in either the Note and Security Deed to institute or maintain a foreclosure; and

2. That this Court grant Declaratory Judgment which states that Shulman, Rogers, Gandal, Pordy & Ecker P.A. has no legal standing or the proper legal or equitable interest in either the Note and Security Deed to institute or maintain a foreclosure; and

3. That this Court rule that the Notice of Sale Under Power is legally defective and precluded from enforcement;

4. That this Court Rule that the Foreclosure Case against Plaintiff(s) is wrongful, unlawful, and void.

5. That this Court causes the removal, or causes a striking, of the fraudulent assignment recorded upon the Property Records in the District of Columbia.

6. That this Court issue a Declaratory Judgment in accordance with the relief requested hereinabove;

7. That the Defendant(s), jointly and severally, be required to pay damages for the slander of Plaintiff(s)' title to land;

8. That the Defendants(s), jointly and severally, be required to pay damages for libel to

Plaintiff(s)' credit;

9. That the Defendant(s), jointly and severally be required to pay damages, including punitive damages, to the Plaintiff(s) for the fraud against the Plaintiff(s);

10. That the Defendant(s), jointly and severally, be required to pay damages for Emotional stress and grief, and unnecessary financial hardship caused by Plaintiff(s) having to take time to research law and procedures to protect her property, in the amount of treble damages, or $643,344.51 per each Defendant in this complaint;

11. That the Defendant(s), jointly be required to pay damages and that the Defendant(s) be required to prove to this Court any legal claim, lien, encumbrances or security against Plaintiff(s)' property and that this Court declare the same encumbrances void and further declare the Plaintiff(s)' property free and clear from all claims; and for any other and further relief that this Court deems just and proper.

12. Plaintiff(s) seeks the Court order to have the Plaintiff(s) restored of all monies paid into the note, interests and fees, as actual monetary damages estimated before auditing including interests.

13. That the Court order such an award reasonable and customary for fees, commensurate with all attorney fees and recoupment of all costs in bringing this act ion, as permitted by law.

14. That this Court addresses all counts by Defendant(s) on false reporting to the Credit Reporting Agencies and made liable for a monetary reward of $100,000.00 for each count.

15. That the court dismisses all counter claims on behalf of the Defendant(s), with prejudice.

16. In the Alternative, Plaintiff(s) moves for a jury trial on all questions of fact raised by this complaint where the law must prevail over equity and where Defendant(s) denies an allegation.

17. **Determination** by this Court to GRANT Plaintiff(s) motion for an Emergency Restraining Order.

18. **Determination** by this Court to GRANT Plaintiff(s) motion to Enjoin Case No. 1:16-cv-01265-TSC in the District Court for the District of Columbia to this case against Shulman, Rogers, Gandal, Pordy & Ecker P.A. and HSBC Mortgage Corporation (USA).

19. **Determination** by this Court that Defendants collectively, did work or are working in collusion with each other in Act or course of deception, an intentional concealment,

21

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

omission, or perversion of truth, to (1) gain unlawful or unfair advantage, (2) induce another to part with some valuable item or surrender a legal right, (3) unjustly gain from the fraud perpetrated against Plaintiff(s) (4) inflict injury in some manner against the Plaintiff(s) herein. Accordingly, the rulings and determinations of The United States Supreme Court have precedent over the opinions of Agents for HSBC Mortgage Corporation (USA) and justly require a judgment in favor of Plaintiff(s) herein in treble damages, or $643,344.51 from each Defendant plus a like amount for aggravation, inconvenience, defamation, and intentional affliction of emotional duress.

20. Wherefore; Plaintiff(s) seeks award in treble damages, or $643,344.51 from each defendant plus a like amount for Act or course of deception, an intentional concealment, omission, or perversion of truth, to (1) gain unlawful or unfair advantage, (2) induce another to part with some valuable item or surrender a legal right, or (3) unjustly gain from the fraud perpetrated against Plaintiff (4) inflict injury in some manner against the Plaintiff herein.

21. Wherefore; Plaintiff seeks award in treble damages, or $643,344.51 from each defendant plus a like amount for aggravation, inconvenience, defamation, and intentional affliction of emotional duress in favor of Plaintiff(s) herein.

22. Wherefore; Plaintiff(s) requests award in treble damages, or $643,344.51 from each defendant for violation of fair debt collection act procedures, willful fraud, willful misrepresentation, willful breach of trust, and willful dishonest service to the public, willful making false statements, plus a like amount for aggravation, inconvenience, defamation, and intentional affliction of emotional duress in favor of Plaintiff. Pro se litigants may be entitled to Attorney fees and costs under the Civil Rights Attorney's Fee Award Act of 1976, 90 Stat. 2641, as amended 42 USC 1988.

Respectfully submitted this 7th day of September, 2016

By: _Vicki R. Nolan_
VICKI R. NOLAN, Sui Juris

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES

# VERIFICATION

I, VICKI R. NOLAN declare as follows:

1) I am named as the Plaintiff(s) in the above-entitled matter.

2) I have read the foregoing Notice of Claim of Lis Pendens Lien and Relief for Compensatory and Punitive Damages, and attached Affidavit, and know the facts therein stated to be true and correct.

3) I declare, under penalty of perjury pursuant to the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 7th day of September, 2016

By: _Vicki R. Nolan_
VICKI R. NOLAN, Sui Juris
**Seldon Office of Executrix**
6906 Mountain Lake Place
CAPITOL HEIGHTS, MARYLAND near [20743]

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND
PUNITIVE DAMAGES

**AFFIDAVIT**

THE DISTRICT OF COLUMBIA

CITY OF WASHINGTON

I, <u>VICKI R. NOLAN</u> being domiciled in the District of Columbia and;

1. Being of the age of Majority, and;

2. Submitted the attached Notice of Claim of Lis Pendens Lien and Relief for Compensatory and Punitive Damages says;

   I do hereby affirm that the allegations contained herein are true to my best knowledge and belief

FURTHER AFFIANT SAYETH NOT.


Respectfully submitted on this____day of September, 2016



By: *Vicki R. Nolan*
VICKI R. NOLAN, Sui Juris
**Seldon Office of Executrix**
6906 Mountain Lake Place
CAPITOL HEIGHTS, MARYLAND near [20743]

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**JURAT**

State of Maryland                              )
                                               ) solemnly affirming
County of Prince Georges                       )  and subscribing


By: *Vicki R. Nolan*
VICKI R. NOLAN, Sui Juris


On this 7 day of September, 2016, personally appeared before me, VICKI R. NOLAN whose

name is subscribed in the within Notice of Claim of Lis Pendens Lien and Relief for

Compensatory and Punitive Damages, and acknowledged to me that she executed the same.


Witness my hand and official seal              By: *Marcell C. Strike*
                                                        Notary Public


My commission expires: *April 22, 2017*

# *EXHIBIT – A*

Let the record show the following Deed of Trust and Agreement lacks the Lender's acknowledgement and acceptance and is inadmissible as evidence of a debt.

Deed of Trust in Instrument No. 2006001053 among the Official Records of the District of Columbia.

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND
PUNITIVE DAMAGES

$1\%2$

Return To:
HSBC MORTGAGE CORPORATION
(USA)
2929 WALDEN AVE, DEPEW, NY
14043


.T1-5-2006001053-1

*File: 05-DC-0065*
*SQUARE 3561, LOT 0024*

——— — — — — — (Space Above This Line For Recording Data) ———

# DEED OF TRUST

**MIN 100022406095016078**


.T2-8-8-17

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document. which is dated **December 07, 2005**
together with all Riders to this document.

(B) "Borrower" is VICKI RENEE NOLAN

Borrower's address is 2101 2ND STREET NE, WASHINGTON, DC  20002
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is HSBC Mortgage Corporation (USA)

Lender is a DELAWARE CORPORATION
organized and existing under the laws of DELAWARE
Lender's address is 2929 WALDEN AVENUE, DEPEW, NY  14043

(D) "Trustee" is PAUL M. WESTFALL

Trustee's address is 2929 WALDEN AVENUE, DEPEW, NY  14043

DC 3114                                                       0609501607

DISTRICT OF COLUMBIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

-6A(DC) (0205)        Form 3009  1/01
                      (rev. 8/02)
Page 1 of 13          Initials _____

VMP MORTGAGE FORMS - (800)521-7291

5/16

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated December 07, 2005
The Note states that Borrower owes Lender TWO HUNDRED THOUSAND and NO/100
                                                                                          Dollars
(U.S. $200,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 01, 2036         .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia. **SEE SCHEDULE A ATTACHED HERETO**

Parcel ID Number: 3561/0024                                      which currently has the address of
2101 2ND STREET NE                                                                      [Street]
Washington, District of Columbia 20002          [Zip Code] ("Property Address").

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DC 3114                                                                      0609501607

4A(DC) (0205)                        Page 3 of 15         Form 3009 1/01 (rev. 5/02)

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

DC 3114                                                                 0609501607

4A(DC) (0206)         Page 4 of 15      init.      Form 3009 1/01 (rev. 5/02)

obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower. (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

DC 3114                                                   0609501607

4A(DC) (0205)            Page 6 of 15          Form 3008 1/01 (rev. 5/02)

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

DC 3114                                                       0609501607

-6A(DC) (0308)                     Page 8 of 15                       Form 3009 1/01 (rev. 6/02)

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

DC 3114                                                            0609501607

4A(DC) (0205)                    Page 9 of 15                    Form 3009 1/01 (rev  5/02)

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DC 3114

-6A(DC) (0706)     Page 10 of 15     Form 3009 1/01 (rev 5/02)     0609501607

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DC 3114                                                                    0609501607

-4A(DC) (0205)                          Page 12 of 15                 Form 3009 1/01 (rev. 6/02)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 0.0000 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____            *Renee*
                                     *Vicki R. Nolan*          _____ (Seal)
                                     VICKI RENEE NOLAN              -Borrower

                                     2101 2ND STREET NE, WASHINGTON, DC
                                     20002                          (Address)

___ __ _ _ __ __ _            ___ ___ ___ ___ ___ ___ ___ (Seal)
                                                               -Borrower


                                                               (Address)


_____ (Seal)   ___ ___  __ ___ ___ ___ ___ (Seal)
                 -Borrower                                     -Borrower


                 (Address)                                     (Address)


___ __ __ ___ ___ (Seal)       _____ ___ (Seal)
                 -Borrower                                     -Borrower


                 (Address)                                     (Address)


___ ___ __ __ __ ___ (Seal)    _____ ___ (Seal)
                 -Borrower                                     -Borrower


                 (Address)                                     (Address)



DC 3114                                        0609501607

-4A(DC) (0205)            Page 14 of 15      Form 3009 1/01 (rev. 5/02)

## Exhibit A

Lot 24 in Square 3561 in William S. Phillips' subdivision of Block 9, "Highview" and
parts of "Metropolis View" as per plat recorded in Liber 56 folio 101 in the Officer of the
Surveyor for said District. Subject to 5 feet building line on V Street as shown on said
plat. Subject to covenants of record or such of same as are now of legal force and effect.

AND BEING the same property conveyed to VICKI RENEE NOLAN from VICKI
RENEE NOLAN (personal respresentative) of the Estate of Willie B. by Deed dated
August 12, 2005, and recorded August 16, 2005, in Instrument No. 2005114819, among
the Land Records of The District of Columbia County.

**DISTRICT OF COLUMBIA, ss:**

I, *Altovese L. Warner*

of Columbia, do hereby certify that

Vicki Renee Nolan

*State of Maryland*

, a Notary Public in and for the District

personally known to me as the person(s) who executed the foregoing instrument bearing date of   *7*
day of *DECEMBER, 2005*   , personally appeared before me in said District and acknowledged said
instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes
therein contained.

Witness my hand and official seal this     *7*     day of  *DECEMBER, 2005.*

_____ (Seal)
Notary Public, D.C.

# SECURITY AFFIDAVIT

## CLASS 1 AND CLASS 2

File No. 05-DC-0065(B)

I, VICKI RENEE NOLAN, the owner of the real property described within, certify, subject to criminal penalties for making false statements pursuant to Section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (D.C. Law 4-164; D.C. Code 22-2514), that the real property described within is either Class 1 Property or Class 2 Property, as those classes of property are established pursuant to Section 412a of District of Columbia Real Property Tax Revision Act of 1974, approved September 3, 1974 (88 Stat. 1051 D.C. Code 47-813), with 5 or fewer units.

_Vicki Renee Nolan_
**VICKI RENEE NOLAN**

Subscribed and sworn to before me this 7th day of December, 2005,

_____
Notary Public

My commission expires: _10/6/09_

Doc# 2005001053 Fees $131.50
11/04/2005   12.46PM Pages 17
filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING            $      125.00
SURCHARGE            $        6.50

THIS IS TO CERTIFY THAT THIS IS A TRUE COPY

_Ida Williams_

Recorder of Deeds, D.C.

# *EXHIBIT – B*

Let the record show public law, 15 US Code 1640 - Civil Liability - Class Action for Damages;
Amount of Award.

And 15 US Code 1641 - Liability of Assignees - Prerequisites, Proof of Compliance with
Statutory Provisions, Right of Recession by Consumer Unaffected, Rights Upon Assignment of
Mortgages, Limitation of Damages.

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND
PUNITIVE DAMAGES

# 15 U.S. Code § 1640 - Civil liability

Current through Pub. L. 114-38. (See Public Laws for the current Congress.)
- **US Code**
- **Notes**
- **Authorities (CFR)**

prev | next

**(a)INDIVIDUAL OR CLASS ACTION FOR DAMAGES; AMOUNT OF AWARD; FACTORS DETERMINING AMOUNT OF AWARD** Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

**(1)**

any actual damage sustained by such person as a result of the failure;

**(2)**

**(A)**

**(i)**

in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000, (iii) in the case of an individual action relating to an open end consumer credit plan that is not secured by real property or a dwelling, twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures; [1] or (iv) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or

**(B)**

in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $1,000,000 or 1 per centum of the net worth of the creditor;

**(3)**

in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under

section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court; and

**(4)**

in the case of a failure to comply with any requirement under section 1639 of this title, paragraph (1) or (2) of section 1639b(c) of this title, or section 1639c(a) of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. In connection with the disclosures referred to in subsections (a) and (b) of section 1637 of this title, a creditor shall have a liability determined under

paragraph (2) only for failing to comply with the requirements of section 1635 of this title, 1637(a) [2] of this title, or any of paragraphs (4) through (13) of section 1637(b) of this title, or for failing to comply with disclosure requirements under State law for any term or item that the Bureau has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms or items referred to in section 1637(a) of this title, or any of paragraphs (4) through (13) of section 1637(b) of this title. In connection with the disclosures referred to in subsection (c) or (d) of section 1637 of this title, a card issuer shall have a liability under this section only to a cardholder who pays a fee described in section 1637(c)(1)(A)(ii)(I) or section 1637(c)(4)(A)(i) of this title or who uses the credit card or charge card. In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title, of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or section 1638(b)(2)(C)(ii) of this title, of subparagraphs (A), (B), (D), (F), or (J) of section 1638(e)(2) of this title (for purposes of paragraph (2) or (4) of section 1638(e) of this title), or paragraph (4)(C), (6), (7), or (8) of section 1638(e) of this title, or for failing to comply with disclosure requirements under State law for any term which the Bureau has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms referred to in any of those paragraphs of section 1638(a) of this title orsection 1638(b)(2)(C)(ii) of this title. With respect to any failure to make disclosures required under this part or part D or E of this subchapter, liability shall be imposed only upon the creditor required to make disclosure, except as provided in section 1641 of this title.

**(b)CORRECTION OF ERRORS**
A creditor or assignee has no liability under this section or section 1607 of this title or section 1611 of this title for any failure to comply with any requirement imposed under this part or part E, if within sixty days after discovering an error, whether pursuant to a final written examination report or notice issued under section 1607(e)(1) of this title or through the creditor's or assignee's own procedures, and prior to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower.

**(c)UNINTENTIONAL VIOLATIONS; BONA FIDE ERRORS**
A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

**(d)LIABILITY IN TRANSACTION OR LEASE INVOLVING MULTIPLE OBLIGORS**
When there are multiple obligors in a consumer credit transaction or consumer lease, there shall be no more than one recovery of damages under subsection (a)(2) for a violation of this subchapter.

**(e)JURISDICTION OF COURTS; LIMITATIONS ON ACTIONS; STATE ATTORNEY GENERAL ENFORCEMENT**Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a)

of this title), 1 year from the date on which the first regular payment of principal is due under the loan. Any action under this section with respect to any violation of section 1639,1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of

section 1639, 1639b, 1639c, 1639d, 1639e, 1639f, 1639g, or 1639h of this title may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs. The State attorney general shall provide prior written notice of any such civil action to the Federal agency responsible for enforcement under section 1607 of this title and shall provide the agency with a copy of the complaint. If prior notice is not feasible, the State attorney general shall provide notice to such agency immediately upon instituting the action. The Federal agency may—

**(1)**

intervene in the action;

**(2)**upon intervening—

**(A)**

remove the action to the appropriate United States district court, if it was not originally brought there; and

**(B)**

be heard on all matters arising in the action; and

**(3)**

file a petition for appeal.

#### (f)GOOD FAITH COMPLIANCE WITH RULE, REGULATION, OR INTERPRETATION OF BUREAU OR WITH INTERPRETATION OR APPROVAL OF DULY AUTHORIZED OFFICIAL OR EMPLOYEE OF FEDERAL RESERVE SYSTEM

No provision of this section, section 1607(b) of this title, section 1607(c) of this title, section 1607(e) of this title, or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Bureau or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Bureau to issue such interpretations or approvals under such procedures as the Bureau may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

#### (g)RECOVERY FOR MULTIPLE FAILURES TO DISCLOSE

The multiple failure to disclose to any person any information required under this part or part D or E of this subchapter to be disclosed in connection with a single account under an open end consumer credit plan, other single consumer credit sale, consumer loan, consumer lease, or other extension of consumer credit, shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries. This subsection does not bar any remedy permitted by section 1635 of this title.

#### (h)OFFSET FROM AMOUNT OWED TO CREDITOR OR ASSIGNEE; RIGHTS OF DEFAULTING CONSUMER

A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person under subsection (a)(2) against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has

been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this subchapter.

## (i)CLASS ACTION MORATORIUM

(1)IN GENERAL During the period beginning on May 18, 1995, and ending on October 1, 1995, no court may enter any order certifying any class in any action under this subchapter—

### (A)

which is brought in connection with any credit transaction not under an open end credit plan which is secured by a first lien on real property or a dwelling and constitutes a refinancing or consolidation of an existing extension of credit; and

(B)which is based on the alleged failure of a creditor—

### (i)

to include a charge actually incurred (in connection with the transaction) in the finance charge disclosed pursuant to section 1638 of this title;

### (ii)

to properly make any other disclosure required under section 1638 of this title as a result of the failure described in clause (i); or

### (iii)

to provide proper notice of rescission rights under section 1635(a) of this title due to the selection by the creditor of the incorrect form from among the model forms prescribed by the Bureau or from among forms based on such model forms.

(2)EXCEPTIONS FOR CERTAIN ALLEGED VIOLATIONS Paragraph (1) shall not apply with respect to any action—

### (A)

described in clause (i) or (ii) of paragraph (1)(B), if the amount disclosed as the finance charge results in an annual percentage rate that exceeds the tolerance provided in section 1606(c) of this title; or

(B)described in paragraph (1)(B)(iii), if—

### (i)

no notice relating to rescission rights under section 1635(a) of this title was provided in any form; or

### (ii)

proper notice was not provided for any reason other than the reason described in such paragraph.

## (j)PRIVATE EDUCATIONAL LENDER

A private educational lender (as that term is defined in section 1650(a) of this title) has no liability under this section for failure to comply with section 1638(e)(3) of this title).[3]

## (k)DEFENSE TO FORECLOSURE

## (1)IN GENERAL

Notwithstanding any other provision of law, when a creditor, assignee, or other holder of a residential mortgage loan or anyone acting on behalf of such creditor, assignee, or holder, initiates a judicial or nonjudicial foreclosure of the residential mortgage loan, or any other action to collect the debt in connection with such loan, a consumer may assert a violation by a creditor of paragraph (1) or (2) of section 1639b(c) of this title, or of section 1639c(a) of this title, as a matter of defense by recoupment or set off without regard for the time limit on a private action for damages under subsection (e).

## (2)AMOUNT OF RECOUPMENT OR SETOFF

## (A)In general

The amount of recoupment or set-off under paragraph (1) shall equal the amount to which the consumer would be entitled under subsection (a) for damages for a valid claim brought in an original action against the creditor, plus the costs to the consumer of the action, including a reasonable attorney's fee.

## (B)Special rule

Where such judgment is rendered after the expiration of the applicable time limit on a private action for damages under subsection (e), the amount of recoupment or set-off under paragraph (1) derived from damages under subsection (a)(4) shall not exceed the amount to which the consumer would have been entitled under subsection (a)(4) for damages computed up to the day preceding the expiration of the applicable time limit.

**(l)EXEMPTION FROM LIABILITY AND RESCISSION IN CASE OF BORROWER FRAUD OR DECEPTION**
In addition to any other remedy available by law or contract, no creditor or assignee shall be liable to an obligor under this section, if such obligor, or co-obligor has been convicted of obtaining by actual fraud such residential mortgage loan.

(Pub. L. 90–321, title I, § 130, May 29, 1968, 82 Stat. 157; Pub. L. 93–495, title IV, §§ 406, 407, 408(a)–(d),Oct. 28, 1974, 88 Stat. 1518; Pub. L. 94–222, § 3(b), Feb. 27, 1976, 90 Stat. 197; Pub. L. 94–240, § 4, Mar. 23, 1976, 90 Stat. 260; Pub. L. 96–221, title VI, § 615, Mar. 31, 1980, 94 Stat. 180; Pub. L. 100–583, § 3, Nov. 3, 1988, 102 Stat. 2966; Pub. L. 103–325, title I, § 153(a), (b), Sept. 23, 1994, 108 Stat. 2195; Pub. L. 104– 12, § 2, May 18, 1995, 109 Stat. 161; Pub. L. 104–29, § 6, Sept. 30, 1995, 109 Stat. 274; Pub. L. 110–289, div. B, title V, § 2502(b), July 30, 2008, 122 Stat. 2857; Pub. L. 110–315, title X, § 1012(a), Aug. 14, 2008, 122 Stat. 3482; Pub. L. 111–22, div. A, title IV, § 404(b), May 20, 2009, 123 Stat. 1658; Pub. L. 111–24, title I, § 107, title II, § 201(b), May 22, 2009, 123 Stat. 1743, 1745; Pub. L. 111–203, title X, § 1100A(2), title XIV, §§ 1413, 1416, 1417, 1422, July 21, 2010, 124 Stat. 2107, 2148, 2153, 2157.)

---

[1] So in original. The semicolon probably should be a comma.

[2] So in original. Probably should be preceded by "section".

[3] So in original. The closing parenthesis probably should not appear.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*
U.S. Code Toolbox

LII on your phone:
Wex: Commercial Law: Overview
@CLS: Clarke Business Law Institute
Title 15 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

Find a Lawyer

1.        **U.S. Code** › Title 15 › Chapter 41 › Subchapter I › Part B › § 1641

# 15 U.S. Code § 1641 - Liability of assignees

Current through Pub. L. 114-38. (See Public Laws for the current Congress.)
- **US Code**
- **Notes**
- **Authorities (CFR)**

prev | next

### (a)PREREQUISITES

Except as otherwise specifically provided in this subchapter, any civil action for a violation of
this subchapter or proceeding under section 1607 of this title which may be brought against
a creditor may be maintained against any assignee of such creditor only if the violation for
which such action or proceeding is brought is apparent on the face of the disclosure
statement, except where the assignment was involuntary. For the purpose of this section, a
violation apparent on the face of the disclosure statement includes, but is not limited to (1)
a disclosure which can be determined to be incomplete or inaccurate from the face of the
disclosure statement or other documents assigned, or (2) a disclosure which does not use
the terms required to be used by this subchapter.

### (b)PROOF OF COMPLIANCE WITH STATUTORY PROVISIONS

Except as provided in section 1635(c) of this title, in any action or proceeding by or against
any subsequent assignee of the original creditor without knowledge to the contrary by the
assignee when he acquires the obligation, written acknowledgement of receipt by a person
to whom a statement is required to be given pursuant to this subchapter shall be conclusive
proof of the delivery thereof and, except as provided in subsection (a), of compliance with
this part. This section does not affect the rights of the obligor in any action against the
original creditor.

### (c)RIGHT OF RESCISSION BY CONSUMER UNAFFECTED

Any consumer who has the right to rescind a transaction under section 1635 of this
title may rescind the transaction as against any assignee of the obligation.

### (d)RIGHTS UPON ASSIGNMENT OF CERTAIN MORTGAGES
### (1)IN GENERAL

Any person who purchases or is otherwise assigned a mortgage referred to in section
1602(aa) [1] of this title shall be subject to all claims and defenses with respect to that
mortgage that the consumer could assert against the creditor of the mortgage, unless the
purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable
person exercising ordinary due diligence, could not determine, based on the documentation
required by this subchapter, the itemization of the amount financed, and other disclosure of
disbursements that the mortgage was a mortgage referred to in section 1602(aa) [1] of this
title. The preceding sentence does not affect rights of a consumer under subsection (a), (b),
or (c) of this section or any other provision of this subchapter.

### (2)LIMITATION ON DAMAGES Notwithstanding any other provision of law, relief provided as a
result of any action made permissible by paragraph (1) may not exceed—
### (A)

with respect to actions based upon a violation of this subchapter, the amount specified in
section 1640 of this title; and

### (B)with respect to all other causes of action, the sum of—
### (i)

the amount of all remaining indebtedness; and

**(ii)**
the total amount paid by the consumer in connection with the transaction.

**(3)OFFSET**
The amount of damages that may be awarded under paragraph (2)(B) shall be reduced by the amount of any damages awarded under paragraph (2)(A).

**(4)NOTICE**
Any person who sells or otherwise assigns a mortgage referred to in section 1602(aa)

1

of this title shall include a prominent notice of the potential liability under this subsection as determined by the Bureau.

**(e)LIABILITY OF ASSIGNEE FOR CONSUMER CREDIT TRANSACTIONS SECURED BY REAL PROPERTY**
**(1)IN GENERAL** Except as otherwise specifically provided in this subchapter, any civil action against a creditor for a violation of this subchapter, and any proceeding under <u>section 1607 of this title</u> against a creditor, with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if—

**(A)**
the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and

**(B)**
the assignment to the assignee was voluntary.

**(2)VIOLATION APPARENT ON THE FACE OF THE DISCLOSURE DESCRIBED**For the purpose of this section, a violation is apparent on the face of the disclosure statement if—

**(A)**
the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or

**(B)**
the disclosure statement does not use the terms or format required to be used by this subchapter.

**(f)TREATMENT OF SERVICER**
**(1)IN GENERAL**
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

**(2)SERVICER NOT TREATED AS OWNER ON BASIS OF ASSIGNMENT FOR ADMINISTRATIVE CONVENIENCE**
A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.

**(3)"SERVICER" DEFINED**
For purposes of this subsection, the term "servicer" has the same meaning as in <u>section 2605(i)(2) of title 12</u>.

**(4)APPLICABILITY**
This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

**(g)NOTICE OF NEW CREDITOR**
**(1)IN GENERAL** In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—
**(A)**
the identity, address, telephone number of the new creditor;
**(B)**
the date of transfer;
**(C)**
how to reach an agent or party having authority to act on behalf of the new creditor;
**(D)**
the location of the place where transfer of ownership of the debt is recorded; and
**(E)**
any other relevant information regarding the new creditor.
**(2)DEFINITION**
As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

(Pub. L. 90–321, title I, §131, May 29, 1968, 82 Stat. 157; Pub. L. 96–221, title VI, §616(a), Mar. 31, 1980, 94 Stat. 182; Pub. L. 103–325, title I, §153(c), Sept. 23, 1994, 108 Stat. 2195; Pub. L. 104–29, §7, Sept. 30, 1995, 109 Stat. 274; Pub. L. 111–22, div. A, title IV, §404(a), May 20, 2009, 123 Stat. 1658; Pub. L. 111–203, title X, §1100A(2), July 21, 2010, 124 Stat. 2107.)

---

[1] See References in Text note below.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*
U.S. Code Toolbox

LII on your phone:
Wex: Commercial Law: Overview
@CLS: Clarke Business Law Institute
Title 15 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities
AddThis Sharing Buttons

## CERTIFICATE OF SERVICE

This is to certify that the within and foregoing Notice of Claim of Lis Pendens Lien and Relief for Compensatory and Punitive Damages was mailed via certified US Mail to the following:

**PLEASE SERVE DEFENDANTS BELOW:**

Resident Agent for SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A.
C T CORPORATION SYSTEM
1015 15TH STREET, N.W., SUITE 1000
WASHINGTON, DISTRICT OF COLUMBIA 20005

Resident Agent for HSBC MORTGAGE CORPORATION (USA)
C T CORPORATION SYSTEM
1015 15TH STREET, N.W., SUITE 1000
WASHINGTON, DISTRICT OF COLUMBIA 20005

FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE)
3900 WISCONSIN AVENUE, N.W.
WASHINGTON, DC 20016

MCGUIREWOODS, LLP
P.O. BOX NORTH TRYON ST., SUITE 3000
CHARLOTTE, NC 28202

ATLANTIC LAW GROUP, LLC
Devon cipperly &/or Patrick M. A. Decker
P.O. Box 2548
Leesburg, VA 20177

**OF PRO SE COUNSEL**

VICKI R. NOLAN
**Seldon Office of Executrix**
6906 MOUNTAIN LAKE PLACE
CAPITOL HEIGHTS. MD 20743

Respectfully submitted this 8th day of September, 2016

By: _Vicki R. Nolan_
VICKI R. NOLAN, Sui Juris

NOTICE OF CLAIM OF LIS PENDENS LIEN AND RELIEF FOR COMPENSATORY AND PUNITIVE DAMAGES